Case number 19-1122, Richard Gaetano, et al. v. the United States of America, et al. Four arguments not to be seen, 15 minutes presiding, Mr. Joseph Falcone for the appellants. Good morning. Good morning, Judge. May it please the court, I'm Joseph Falcone for Kimberly and Richard Gaetano, the appellants. This case pits the Anti-Injunction Act against the right of a taxpayer to protect his attorney-client privilege. In this case, if the government would have issued a grand jury subpoena or a summons, the taxpayer would have had the right to go in and say, wait a second, this is attorney-client material that you're trying to get from my previous attorney. Isn't that the key right there, that you're trying to get? Because we don't know what the attorney, we don't know what was exchanged by the attorney and the agent, do we? No, all we know is that your client threatened and advised a former business partner that I've been with an agent, you know, all the threats we know about. That's all we have at bar here. We don't have any, do we? Do we have any way of knowing the point of all that? Since this was a 12B6 motion, and my amended complaint should have been taken as true, in the amended complaint, I allege that he had attorney-client material, and we did not want the government to question him. But the fact that he has attorney-client material doesn't mean he divulged it. No, it doesn't mean that he divulged it. And what I'm trying to do is prevent the government from receiving it. The government's position is that as long as an attorney or anybody has privileged material and feels like they want to give it to the government, I can't do anything about it. The government agent, right, isn't it undisputed that the agent said, you can't give me attorney-client material? I mean, is that undisputed? It's undisputed that Mr. Goodman, who was disbarred for bad stuff, said, oh yeah, sure, I know what I can give you and what I can't. I mean, so this, if you want to say this is, if the government was asking Joe Falcone or my opposing counsel about attorney-client privilege, we could assume that we would say no, I can't do that. But Mr. Goodman, I mean, maybe I'm assuming the opposite, but he's a nut. You're assuming a lot, are you not, counsel? The whole action is too early, isn't it? What I allege is that he was our attorney and that we asked that the government be instructed not to receive attorney-client privilege information from him. And I know what's done is done, but in the future, we ask them not to receive it. I think that what I would have had to do is ask the district court, and this is not a common case, so I don't think it would burden the court, maybe to appoint a special master, maybe to... Are you asking courts just to police, generally, attorneys talking to the government? I think that when you have an attorney who is plain he isn't going to follow the rules, and we cannot rely on his good faith, that the courts should intervene. When he says he isn't, when he says he isn't going to follow the rules. This court hardly ever deals with people's minds, what we think they might do someday, which is what you brought before us. Interesting. I know that my position is that we have this rogue attorney who wants to give the government all of the privileged information. What about this concrete point, that we don't know any of this stuff, but don't we know one thing for sure, that if the government tries to use attorney-client privileged information, you can stop them at that point? In other words, even assume the worst, that the government is going to do this, which seems to me unfair, but let's just say they do, likely by mistake. They define it one way, and you say, no, wait, wait, that is classic attorney-client. Won't that just stop it in its tracks? I don't think that that's an adequate remedy. Why not? I don't get it. Because the attorney-client privilege is something that the person has, and once it's let loose, like a bird, it's gone. Go ahead. That's just not true. You can't use that information in a tax prosecution. Are you afraid they're going to gossip about it? Government lawyers are going to be gossiping about your clients? I don't think the government's entitled to receive attorney-client information just because down the street. It's not that it's entitled. If it has it, that's what courts consider if the government used it, and that's where you have a remedy. The government in this case won't give us assurances that it will not seek attorney-client-privileged material from you. That's quite wise because they don't know how the conversation is going to unfold. I think they're being very fair-minded. They can't make a promise they can't deliver on because how do they know if in the course of the conversation this lawyer doesn't just say something? They didn't ask for it, but they get it anyway. You still have not concretely explained why you can't protect your client's interests if the information is used. I'm just not getting it, and you need to be more specific if you're going to make headway, at least with me. I don't believe that excluding evidence later on is an adequate remedy. We do it all the time, though. That is how it's done, right? In any case where even a constitutional right is violated, the way we remedy it is excluding evidence after the fact. We don't go police things before the fact. We go do it after. That's what courts are. They're reactive. I would think that we know in civil discovery matters or in these grand jury subpoenas or if you have a summons that you're arguing about, an IRS summons like an Upjohn or one of those cases, the courts do look at it ahead of time and say, Is this attorney-client privilege? Should we let this go to the government? Otherwise, why would we even have a summons enforcement? We would just say, Oh, give them everything, and then later on we can just... That's because there's a lawsuit between two parties, and when you have a lawsuit between two parties, you subject yourself to discovery, and it's then that the attorney-client stuff comes up. I mean, your argument to me is akin to there's a trial. Your opponent is Mr. Goodman. You go to the trial judge and you say, You can't trust this guy. I promise you at closing, he is going to mention stuff that's not in the record. Don't let him have a closing argument. That's the remedy. And the judge would say, I'm sorry. He's a licensed practitioner. Yes, he's a little rogue, but if he does that, we'll deal with it then. You don't say no closing arguments for you. I think the court would instruct Mr. Goodman at that point. You'd say, Look, I'm warning you, don't do that. Have there not been warnings enough here? I mean, everyone knows you've told them what you're worried about. At this point, you've got to trust the government to be straight about it. And when they're not, there's remedies. That's the point. If they're not straight about it, there are remedies available. I think that we should have a remedy. If the government issued a subpoena to Mr. Goodman, I would have the right to go and argue, have that subpoena quashed. Subpoena, administrative summons. But if Mr. Goodman just feels like disclosing anything, I don't have any remedy. I'm not sure. I still don't understand. In answer to Judge Cook's early question, what remedy are you asking for? Are you asking for a court to say, Don't be the bad boy? Because he clearly can talk to the government. No one's right. You're not disputing that. That whole silly First Amendment thing. Yeah. I think that the government should bear some burden here to show that they're not going to seek attorney-client information when we have a guy like Mr. Goodman. All right. I think we got your argument. Thank you. Ms. Snyder. Thank you. May it please the Court, Deborah Snyder for the United States of America. In a case like this one where a taxpayer is trying to enjoin the IRS from using certain information in an audit, the Anti-Injunction Act bars the suit. Essentially what the Gaetanos are asking is that the district court supervise their audit, which strikes at the heart of the Anti-Injunction Act, and therefore the district court lacked jurisdiction. So this guy is a pretty bad guy, Goodman, right? And I think you would concede he's got some issues. So, I mean, don't they aren't, isn't their concern at least legitimate that he's going to, I mean, he's done a lot of bad things. I think that's pretty clear. I mean, why aren't they, why isn't their concern legitimate that he's going to spill a bunch of attorney-client information? So on the facts of this case, the complicating factor is that he was a business partner as well as an attorney. And speaking to business partners during audits is actually something that the IRS probably should do. And he came to them and said, I have information from the public record. I have information from a private investigator. And the revenue agent, I think it's kind of a straw man argument to say that the government is relying on Goodman to police himself, although they did ask him to do that. But it's also clear that the revenue agent asked him, you know, don't release privilege information. She consulted with her manager. She consulted with IRS counsel. So this is not a situation where the IRS is affirmatively seeking attorney-client privileged information. And as the court observed a little earlier, if the IRS were to end up with attorney-client privileged information, the remedy is that the evidence would be excluded in a later case on the merits of the Gaetano's tax liability. So it's not that they're without a remedy. It's just that the remedy is not to have consistent district court oversight of an audit. It's that the government would not be able to use the evidence. What does the IRS do? You can imagine this situation where, you know, you have a relationship between a wealthy couple. It doesn't go well. It ends badly. One side is bitter and wants to make life miserable for their former partner. Does the IRS welcome those conversations? So if someone shows up at the door and says, boy, do I have a lot of dirt on my former spouse about all the taxes they're not paying and where they're hiding all their money, or does the IRS take the view, we should stay out of this? Well, first, I don't actually know, but I'm not sure whether there's anything, if there's anything that would prevent the IRS from talking to former spouses. You know, I don't think there's a rule that says the – It's similar to this in the sense that you have someone with an axe to grind but also someone with a lot of information. Well, I think it's true generally that informants, whistleblowers, not that that's this case. I mean, people may have an axe to grind, and I think the IRS would probably consider that in, you know, considering the veracity of the information, but I don't think there's any rule that the government can only talk to saints. So, you know, they are trying to create an exception for this situation because they allege that there's attorney-client privileged information that Goodman will reveal. They haven't pointed to any specific attorney-client privileged information that he has revealed, and essentially what they're trying to do is just to interfere with the IRS's information-gathering process, which this court held in Dickens is off-limits, you know, that basically if the IRS is trying to use information that the taxpayer claims was unlawfully disclosed to the IRS or even in other cases where it was the subject of an illegal search warrant, the remedy is not to hamstring the audit. The remedy would be later on the merits case on the tax liability, and they would have, if they get a notice of deficiency, which they did for one of the two years, they have a prepayment remedy of going to tax court, or they could pay it and then go to the district court. Opposing counsel brought up summons enforcement cases, and that's true that if the IRS were to issue a summons, then Congress has specifically given the courts jurisdiction to adjudicate the summons proceeding, but that's because Congress has created that as one remedy, and, you know, it's certainly true that privilege issues can be litigated in summons cases, but that's not what we have here. What we have here is an IRS audit, and the audit process really falls within any definition of assessment, including that in direct marketing, although they haven't raised that. So the Williams-Packing exception, which they rely on, does not apply, because they have an adequate alternate remedy of having the evidence excluded in court, and also because there's certainly no way that they can show that the government won't prevail, because they haven't even pointed to any privileged information that was allegedly disclosed. I think we got your argument. Thank you. Okay, and if the court has no further questions, we ask for affirmance. Thank you. Mr. Falcone. When the court, the district court, dismissed the complaint against the United States Suspente, we never had a right to introduce affidavits or anything to address these perhaps factual allegations that the court was relying on. Give me how that prejudiced you. What would these affidavits say? Well, we would have given more detail about Mr. Goodman and what he said. I think gilding the lily is a funny way to talk about someone who doesn't behave well, but that seems to me that's the phrase that came to mind. You don't think you've established well enough that he wasn't a good actor? Yes, we did. We established that he wasn't a good actor. So tell me how you were prejudiced by not putting in affidavits. Well, the Didn't you file a motion to reconsider? Yeah, a motion to reconsider, which is the court, which is very limited to see that the court made a mistake, but we didn't have a chance to But in that, you could have included anything you wanted. Well, not really. The motion for reconsideration is pretty limited. I understand, but you could, in a motion for reconsideration, what's usually done is you say, district court, you made a mistake, and here are all the reasons why, and here's what I would have done had you given me the chance, so the district court can understand why they made the mistake, right? Or if. Or if, yeah, thank you. Well, I think that given my pleading, in which we alleged that there was attorney-client information that would be revealed, that based on that, the court shouldn't have dismissed the case. Thanks so much. We appreciate your briefs and oral arguments. The case will be submitted, and the clerk may call the next case.